

FILED
2009 Nov-12  PM 11:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **FRANK KRUSE** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NUMBER:** |
| | ) | **CV-09-J-0283-S** |
| **CITY OF BIRMINGHAM,** | ) | |
| **a municipal corporation,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

## MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

COMES NOW Frank Kruse, Plaintiff in the above-styled matter, by and through counsel and in support of his motion for summary judgment against Defendant City of Birmingham ("City") submits the following:

### Narrative Summary of Undisputed Facts

1.      The City of Birmingham Mayor Larry Langford proposed that an Amnesty Program be implemented to collect outstanding parking tickets.  The proposal finally came to fruition on April 22, 2008, when a version of it was confirmed by the Birmingham City Council.  On that day the Birmingham City Council approved a resolution (Ordinance 08-83) granting Amnesty in the month of July 2008, for unpaid parking and minor traffic tickets. (Exhibit "A")  The resolution, allowed citizens with unpaid tickets to pay them without any additional

fines or the threat of summons or arrest throughout the month of July 2008. (Exhibit "A")

      2.      On April 28, 2008, a letter was issued from Commercial Legal Services to Plaintiff Frank J. Kruse notifying him of a case that was currently pending against him in the City of Birmingham (Case No. 347640) stating that he owed an amount of $1,030.00 for parking fines to the City. (Exhibit "B")

      3.      On July 16, 2008, the City issued and sent to the Plaintiff an "Insufficient Payment Warrant Notice." (Exhibit "C")  The notice was issued to the Plaintiff for ticket number TE2027942 for a meter violation on June 9, 2004.  The notice stated further that "(f)ull Payment of the above Amount MUST be Received in this Office by the Due Date or **a Warrant will be issued for your Arrest**." (emphasis added)  The due date on the Notice was August 6, 2008. (Exhibit "C")

      4.      In July of 2008, Mayor Larry Langford proposed, and the City Council passed, Ordinance 08-176, which extended the amnesty period for one month due to overwhelming compliance. (Exhibit "D") The City informed the local media that at the end of the amnesty period that fees and penalties for overdue tickets would increase and that aggressive enforcement would begin. (Exhibit "E") It was further stated that the City had reached an agreement with a law firm to

collect overdue fines once the amnesty period ended and also stated that those that

failed to take care of their delinquent tickets could face arrest. (Exhibit "E" at p. 4)

6.     The Plaintiff was informed of the City's Amnesty Program and

decided to pay the amounts owed to avoid the threatened warrant of arrest and

additional fines and penalties.  (Kruse depo. at pp. 28-29 – previously attached in

full to City's brief)  On August 25, 2008, within the stated Amnesty Period,

Plaintiff proceeded to the municipal court of the City of Birmingham and paid the

total amount of fines he was told that he owed of $510.00. (Canceled check

attached as Exhibit "F") All of the tickets for which he paid the City were tickets

issued in 2001 and 2002, well in excess of one year of the date of payment. (Kruse

depo. at pp. 24-25, Exhibit 8)

7.     In addition to hiring a new law firm to collect these debts, the City

stated that people who refuse to pay these fines were subject to arrest. (Exhibit

"E")

8.     Parking and traffic tickets are itemized as violations of City of

Birmingham ordinances and/or misdemeanors under section 8-3-10 of the

Municipal Code.

9.     Title 8 of the Municipal Code for the City of Birmingham, Sec. 8-4-2,

entitled "When and how prosecutions begun" states as follows:

"Prosecutions for violation of the provisions of this code and other city ordinances shall be commenced within **12 months after the commission of the act or offense** complained of, and may be begun by warrant of arrest or by arrest without a warrant or any other manner provided by law." (emphasis added)

10.    Ala. Code §15-3-2 (1975) provides that "unless otherwise provided, the prosecution of all misdemeanors before a circuit or district court must be commenced within **12 months after the commission of the offense**." (emphasis added)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

"The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be `sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party.'" *Bailey v. Allgas, Inc.,* 284 F.3d 1237, 1243 (11th Cir.2002) (quoting *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* at 249-250, 106 S.Ct. 2505. (citations omitted).

The issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson,* 477 U.S. at 251-252, 106 S.Ct. 2505. The moving party bears the burden of proving that no genuine issue of material fact exists. *O'Ferrell v. United States,* 253 F.3d 1257, 1265 (11th Cir.2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. *Burton v. City of Belle Glade,* 178 F.3d 1175, 1187 (11th Cir.1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir.1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.,* 750 F.2d 838, 841 (11th Cir.1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company,* 32 F.3d 520, 524 (11th Cir.1994)(citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but. . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R.CIV.P. 56(e) "A mere `scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).

"[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen,* 965 F.2d 994, 998 (11th Cir.1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for

trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* <u>475 U.S. 574</u> at 587,

<u>106 S.Ct. 1348</u>, 89 L.Ed.2d 538 (1986) (citation omitted).

## ARGUMENT

### I.  Refund Due For Unjust Enrichment and Money Had and Received

        In Alabama, the standard regarding unjust enrichment is clear. "One is

unjustly enriched if his retention of a benefit would be unjust." *Jordan v. Mitchell*,

705 So.2d 453, 458 (Ala. Civ. App. 1997)(citing Restatement of Restitution: Quasi

Contracts and Constructive Trusts § 1, Comment c. (1937)). The *Jordan* court

continued:

    "Retention of a benefit is unjust if (1) the donor of the benefit [here, allegedly

Dr. Welch] ... acted under a mistake of fact or in misreliance on a right or duty, **or**

(2) the recipient of the benefit [here, allegedly MEP] ... engaged in some

unconscionable conduct, such as **fraud**, **coercion**, or abuse of a confidential

relationship." (emphasis added)

        The above language from *Jordan*, *supra* was also adopted by the court in

*Home Insurance Company v Hartford Fire Insurance Co*., 379 F.Supp.2d 1282

(MD Ala. 2005)

Likewise, the claim for money had and received requires "that a plaintiff prove facts showing that defendant holds money which in equity and good conscience, belongs to plaintiff or holds money which was improperly paid to defendant because of mistake or fraud."   *State Farm Fire and Casualty Co. v. Evans*, 956 So.2d 390, 392 (Ala. 2006); citing *Dickinson v. Cosmos Broadcasting Co.,* 782 So.2d 260 (Ala.2000).

The undisputed facts establish that more than one year had passed since the issuance of the tickets in question. (Kruse depo at pp. 24-25, Exhibit 8)  No arrest warrant was issued for Plaintiff within the required one-year period. (Chambliss depo pp. 36-37)  The City's representation, both through the media and by direct written notice to Plaintiff, that if he did not pay the tickets that a warrant would be issued for his arrest was fraudulent and/or coercive in nature because the City could not legally arrest Plaintiff.  The City had slept on its rights to prosecute the tickets as provided by law within one year of the offense, yet it coerced payment from Mr. Kruse and others by threatening an arrest, an action it was time-barred from taking.

**A.  Prosecution of Tickets is Barred by One-Year Statute of Limitations**

It is undisputed that all tickets the City sought to be paid by Plaintiff were issued more than one year prior to demand and, in fact, were all issued prior to 2004. (Kruse depo at pp. 24-25, Exhibit 8; Exhibit "C")   At no time, and certainly not within one-year of the issue date of any of the tickets, was a warrant of arrest issued for Plaintiff, nor anyone else for outstanding parking tickets. (Chambliss depo pp. 36-37)

Both section 8-4-2 of the Municipal Code (ordinances) as well as Ala. Code §15-3-2 (1975) (misdemeanors) clearly establishes that prosecution of either must be commenced within **12 months** of the offense.  It is also indisputable what constitutes the commencement of a prosecution under Alabama law.  "A **valid warrant of arrest is the commencement of a criminal prosecution** within the meaning of the statute of limitations.  *State v. Reiner*, 530 So.2d 903 (Ala. Crim App. 1988) citing *State v. Fain,* 484 So.2d 558 (Ala.Cr.App.1986) (emphasis added)    The city, through its Presiding Judge, Raymond Chambliss, has conceded that the tickets had to be prosecuted within one (1) year of the date of issue or be time-barred. (Chambliss depo pp. 17-18, 64)  It is further without dispute that the City threatened that a warrant would be issued for Plaintiff's arrest if the tickets were not paid. (Ex. "C")  These threats were also issued through the media and press releases issued by the City. (Exhibit "E")  Because no arrest warrant was

issued, the prosecution never commenced and was time-barred one year form the issue date of each ticket.

The City either knew that it was without power to follow through with an arrest warrant when it made these representations; made the representations recklessly without regard to whether they were true or not; or made the representations negligently.  Regardless, the representations were designed to coerce payments from individuals such as Mr. Kruse, when he was no longer subject to prosecution.

Moreover, the City never reduced the fines to a judgment, which would have enabled it to execute beyond the one-year limitations period, despite being a requirement of section 838 of the City Code. (Chambliss depo at pp. 74-75)

## B.  Payments Made Under Duress or Coercion May Be Recovered

The payments by Plaintiff were made under the belief that if he failed to pay he was subject to arrest and imprisonment. (Kruse depo. at pp. 28-29)  The City, either knowingly, recklessly or negligently represented to Plaintiff that his choice was to pay the fines or be arrested.  Of course, the City had failed to initiate arrest warrants within the statutory time frame and an arrest warrant would be time-barred and illegal.  Plaintiff was provided no real option other than to pay the fine.

10

"A payment under duress can be recovered as it is not considered voluntary if made because of the wrongful acts or threats of the payee government." *Urban Plumbing & Heating Co. v. United States*, 408 F.2d 382, 389-92, 187 Ct.Cl. 15 (1969), cert. denied, 398 U.S. 958, 90 S.Ct. 2164, 26 L.Ed.2d 542 (1970).  Three elements must be found to establish duress: "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party." Fruhauf Southwest Garment Co. v. United States, 111 F.Supp. 945, 126 Ct.Cl. 51, 62 (1953)

"A payment made to a public officer in discharge of a fee or tax illegally exacted is not such a voluntary payment as will preclude the party from recovering it back."  *Swift Company v. United States*, 111 U.S. 22, 4 Sup. Ct. 244 (1884)

The City's own press release materials acknowledge that their "positional power"… "enables the City to collect funds in a way not matched by a collection agency."  It goes on to state that the "'Warrants Days' punitive measures are necessary to achieve compliance." (Exhibit "E")    The obvious difference between a collection agency and a municipality is the ability to threaten arrest, a threat which the municipality has the apparent authority to carry out.

The In the present case, no other options were provided to Plaintiff by the City

other than pay the fines or be subject to arrest

## II.  Violations of 42 U.S.C. 1983

In order to state a section 1983 claim against a municipality "a plaintiff must allege that he suffered a constitutional injury, and that his injury was caused by 'a policy statement, **ordinance**, regulation, or decision officially adopted and promulgated by that body's officers.'" Marsh v Butler County Alabama,  212 F.3d 1318 (11th Cir. 2000); citing Monell v. Dept. of Social Servs., 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). (emphasis added)

Both the original Amnesty Program and the extension of the program for an additional month were ordinances approved by the Birmingham City Council (Exhibits "A and D")  There is no question that the Amnesty Program was adopted and promulgated by the City, and any constitutional injury to Plaintiff would give rise to a claim under section 1983.

The Due Process Clause of the Fourteenth Amendment provides that no person shall be deprived by a governmental entity of "life, liberty, or property without due process of law." The most familiar function of this Clause is to guarantee procedural fairness in the context of any deprivation of life, liberty, or

property by the governmental entity. Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000) (citation omitted).

The City's coercive conduct in exacting payment under threat of arrest that was itself unlawful, violated Plaintiff's due process.  As has been more fully addressed above, due to duress, he was left with no choice but to part with property in the form of money paid in order to avoid arrest.  No other options were provided by the City.

WHEREFORE, PREMISES CONSIDERED, Plaintiff is entitled to a summary judgment in its favor and against the City of Birmingham, there being no genuine issue as to any material fact and judgment is due to be entered as a matter of law.

/s/ F. Page Gamble_____
F. Page Gamble (ASB-3857-E31F)
F. Page Gamble, P.C.
Suite 2300
300 Vestavia Parkway
Birmingham, Alabama 35216

Richard R. Rosenthal (ASB-3801-A27R)
Law Offices of Richard R. Rosenthal, P.C.
200 Title Building
300 North Richard Arrington Jr. Boulevard
Birmingham, Alabama 35203-3357

Raymond C. Winston (ASB-1799-O54R )
Winston, Winston, Jenkins
& Chastain, LLC
1800 12th Avenue South
Birmingham, Alabama  35205

Attorneys for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the above and foregoing upon counsel of record by electronic mail this 12th day of November, 2009 to:

Michael K.K. Choy, Esq.
CHOY LICHENSTEIN, LLC
2100 Southbridge Parkway
Suite 650
Birmingham, AL  35209
mkc@choylichenstein.com

Fredric L. Fullerton, II, Esquire
John M. Edens, Esquire
City of Birmingham Department of Law
600 City Hall Building
710 North 20th Street
Birmingham, Alabama 35203

/s/ F. Page Gamble _____
Of Counsel

14